Good morning, Your Honors. May it please the Court, my name is Natalie Surrey. I represent Jonathan and Ariel Barbey in this matter. I'd like to reserve two minutes for rebuttal. At your clock. Thank you. This case is about whether an insurance company can keep a case open for adjustment and closed at the same time for limitations. And I'll address and focus on three points. First is the legal line that California draws between insurer-driven requests, please reconsider my case, and insured-driven reopening and active adjustment. Next I'll talk about how State Farm here itself kept the case or the claim open up until October of 2022, which would make the June filing more than timely, comfortably timely. And lastly, at a minimum, the timing of the denial or the adjustment period should have been a question that should have been left for a jury determination, not something that should have been ruled on summary judgment. Turning to the law, there is no dispute between both parties that Insurance Code Section 2071 and the case of Prudential supply the baseline rule and that's the one-year limitation period is equitably told from the point in time that the insured gives notice to the insurance company until the time that the insurance company then denies or otherwise completes its investigation. The point of the rule is practical and it's fairness-based. It allows the insured to give the insurance company the opportunity to investigate the case before rushing to the courthouse to file a lawsuit. On the flip side, it allows the insurance company to properly investigate fully and thoroughly before being met with unnecessary lawsuits. So Singh, the cases of Singh and Eshoo answer the follow-up question. So what happens after that initial denial? Singh takes that framework and it applies it to a very narrow set of facts. The case of Singh deals with, and just very briefly, it deals with the situation where the insureds were put on notice. Go ahead. Sorry. The insureds were put on notice about transients living in the home and causing property damage and they knew about that because there were vandalism claims earlier and the city even stepped in at some point and said you need to remedy the situation before we come in and they did nothing about it and then a fire erupted so they opened a claim with the insurance company and the insurance said, well, we don't have coverage for this case because you breached the policies. You breached your duties under the policies. I take it you're about to get to this, but can I just ask you, if we didn't have Eshoo, if all we had was Singh, would you lose under the rule of Singh? I don't have the specific page number. It's page 145 of that court record and it says beginning a new period of equitable tolling based merely on a request for consideration would be anomalous and the word request is italicized and I think that the court did that to make clear that that's the fact pattern that they're dealing with in that case. They're dealing with a claim from an insured that was essentially not acted upon. I mean, they took the request because they have a duty of good faith to their insureds. They looked at it again and turned back and said, well, we looked at it again and we're relying back on the first denial letter that we sent to you and outlined in multiple bullet points why we're not going to cover this case and that's because you breached your duties under the policy. But I mean, the reason for the denial was different, but you got, for both claims, similar denial letters that expressly referenced the limitations period and said, like, this denial letter starts the one-year limitations period, right? I disagree to an extent, Your Honor. Yes, we did receive two denial letters in this case, one in March, one in October, but the first one was a partial denial letter and the partial denial letter said that there is an exclusion under your policy under wear, tear, and corrosion, but the resulting water damage to the home is covered. That's a partial denial letter. The second denial letter that came in October after the adjustment period relies on a different basis for the denial and it says this is not covered because it's not due to accidental direct physical loss. And I think the variance between the two denial letters is also telling in our case that there was an actual adjustment period between denial one and denial two because the reasoning for the denial are now different. So to directly respond to Your Honor's question, I think that Singh was really focused on a very narrow set of facts and I think they meant to emphasize that they're dealing with a request for reconsideration, not necessarily a situation where a request was made. What about the Migliore case? Isn't that essentially of the variety that you're saying this one is? The Migliore case, Your Honor, which the appellee cites in their brief was a limitations issue that actually went to the jury. This is a case where summary judgment was filed and it was denied and the questions, there were three questions that the jury got to decide whether the limitations period. But the opinion says a statement of willingness to reconsider does not render a denial equivocal. I'm sorry, Your Honor. The opinion says a statement of willingness to reconsider does not render a denial equivocal. So in my reading of Migliore dealt with a situation where it was insurance aftershocks and when the appellant was trying to apply the supplemental, the statute that came out that was, oh gosh, it's I think that the ruling in Migliore is actually supportive in our case because one, it actually went to a jury and a jury was allowed to ultimately decide whether the claim was adjusted, readjusted and the court. But you're suggesting that Sing was a case in which there was a request for a reconsideration, but there was no actual reconsideration. All right. And I'm saying that Migliore was a case in which, again, neither the fact that respondent invited further input from appellant or that she obtained a supplemental report is conclusive of the determination whether the earlier letter was an unequivocal denial. So that seems to be the same circumstance. Yes, Your Honor. And again, that was something that a jury was able to hear based on the evidence and decide based on the facts that were presented that to them that was an unequivocal denial. The facts that we have here greatly vary from the facts in Migliore, the facts in Sing and all the cases that the defense, Marcellus, that the defense relies on. And that's because we have this, number one, we have a partial denial. It's not even a complete denial. Partial denial saying we're not going to cover for the pipe that caused the water loss, but we're going to cover for the resulting water damage. Right? And then we have this letter that the appellate claims... And why does it matter that it's a partial denial? I mean, it's a denial of the part that you're now suing about, right? So why does it matter that they granted a different part? Well, it matters, Your Honor, because it's not necessarily... So the denial is wear tear corrosion only excludes coverage for the source of the loss. So let's say the pipe itself, but the resulting damage is the damage that there was the main discrepancy about. So that's why it matters essentially, because it's not even a complete denial of the claim, because the Barbies are seeking to obtain benefits for the resulting damage to the floors, to the walls, to the kitchen, to the cabinets. That wasn't denied in the March 5, 2022 letter. That denial came in October when they said, well, this case is denied due to accidental direct physical loss, which is one of the... It's the losses... It's the section in which the appellate would... Or the plaintiffs or the insurance would have to prove to the insurance company that this is a covered loss before they... I'm not understanding. You're saying that because the original letter granted part of it, it didn't deny the other part of it? That's exactly what the letter says, Your Honor. It's... The March 5 letter says that this is a partial denial due to wear, tear, corrosion, but the resulting damage is covered. Right. So it was a partial denial. Correct. But then you just said that they didn't actually deny that partial later. Then later in October, the denial says this... We've completed our investigation and this is an accidental direct physical loss, which is a different basis for the denial. So the resulting water damage then in October 3 is now being accounted for. So there is this period in time between March and October where there is a lot of adjustment and activity in this case. And I have it laid out. So March 9... After the March 5 letter goes out to the insurance, they get a check issued on March 9. They get a second check issued on March 31. On March 31, there is a note in the file that says claims still pending mitigation estimate from SurfPro. Then a re-inspection occurs on June 7. Then on July 14, State Farm requests additional information from ServiceMaster to further investigate discrepancies. July 29, another check gets issued. August 11, another note saying that the claim is pending. Then we have... Again on August 11, there is a 40-day status letter and we put this as a footnote in our reply brief because I think it's very important. The only time an insurance provides 40-day status letters is when the case is pending. They are not required to send status letters on a closed claim. So a status letter gets sent out on August 11. September 9, we have a note saying there is a status letter sent on the claim. Then on September 23, we have an entry saying that coverage A appears resolved but cabinetry is being reviewed under a separate claim, again indicating that aspects of the loss are under active claim handling. Then we take the deposition of State Farm's person most knowledgeable who testifies that as of September 23, the claim is in open assignment review. Then we have the denial letter on October 13. This is essentially when State Farm says, okay, we've completed our investigation and this is the... And again, the different reason saying that there is no accidental direct physical loss. This is the first communication that actually looks like a denial where between the time... At the very least, Your Honors, between the time of... But the first letter said it was a denial. The first letter said it was a partial denial, but the resulting damage was covered. Right. So it was a partial denial. It was a partial denial. So are you... Your argument seems to be more like an equitable estoppel argument, like not the typical tolling argument because what they're... It sounds to me that makes this case more difficult because it's not a bright line case. It sounds to me like you're saying, yeah, they said it was a doubt, but then they kept doing all these things, which was saying that it didn't put us on notice that we should sue. They were leading you along, leading your clients along, thinking that they didn't have a cause of action yet because there wasn't a final denial and they were giving all these signals that we're still looking at it and we're here to... Pending notice and they have the file open. So it sounds more like an equitable estoppel argument. Is that what you're making? Your Honor, respectfully, no. We are making the argument that this is an equitable tolling argument. And one of the cases, I think it's Prudential, they differentiate why estoppel and equitable tolling vary vastly and why equitable tolling would encompass more broad situations. And if we look at the reason in Aschew, the court held that the same tolling principles from Prudential would apply to a reopened period. And in this situation, it's little unique because, as I mentioned, this was a partial denial on the 31st saying that, okay, we're not covering the pipe, but we're covering everything else. And then we have the actual denial letter in October that, okay, now we're done investigating the case. So that period between the time that adjustments and inspections and reinvestigations continued, that period should be equitably tolled because there was still the anticipation that, okay, we're working to try to resolve this case. And this is exactly one of the factors that Prudential considered in its five factors, that it's important so that you don't want hasty lawsuits. If you could settle the case and the insurance company can get it right, then that's the outcome that we want. We don't want to have to file lawsuits or have to have the insured file lawsuits just so they prevent this procedural time limitation trap. And although Eshoo took this reasoning in the Northridge Earthquake Claims, it did state specifically on page 762 that the legislature enacted Section 340.9, granting insurers a second bite at the one-year apple. We should construe and apply this one-year period in the same way as the initial one-year period in Insurance Code Section 2071. So the court itself took it upon them to make it known that it's not limited to the earthquake context. And even then, courts have since read Eshoo that way. The court in Gaylord v. Nationwide Mutual Insurance Company cited Eshoo for the proposition that, and I'll quote, an insured's request to an insurer to reconsider a denial will not toll a limitations period, but an insurer's agreement to reopen and reinvestigate can toll that limitations period. What are you quoting from? I'm quoting from Gaylord v. Nationwide and this is at page 1111. And they're citing to Eshoo on pages 762 to 763. And this is not an earthquake case. This has to do with livestock. It's also not a California state court case, right? That was a federal district court? It's a federal, yes, it's a federal district court. But the line that you take from both of these cases is that SING stands for the proposition that the tolling period isn't going to start all over again just because an insured keeps asking to reconsider, reconsider, because then we could have this open-ended timing where insurance companies are going to be reluctant to even agree to reopen a claim because it's just going to continue to prolong. In this instance, there was, they said, we'll reconsider if you get us more information. And did they ever tell the Barbies that they were reconsidering? Their conduct told them that they were reconsidering. But they never said we're reopening, we're reconsidering, anything like that? No, Your Honor. They didn't in writing say anything. So what was their, but their contact was internal, but what about externally? In other words, what did they communicate to the Barbies? The Barbies, the impression that the Barbies had is that their insurance company is investigating the case, they're opening their home. How are they getting that impression is what I'm asking. Because they're asking for information, they're coming to the home, they're investing, they're sending status letters, and their claim notes indicate that the case is open, the case is pending, it's open, it's open. It's consistently showing in the record that the case has been open up until October. So with that in mind, Your Honor, I think, and with all the false... What's strange about this case, and I guess it's true of any limitations period, but they did keep telling you that the limitations period was starting at X time, right? And you had time to file after all this happened and didn't, right? There was another six months or something, even at when they were done, done, done. Is that right? Yes, Your Honor, it is right. Even when they were done, done, done in October, there was still some time to file a lawsuit. But at the end of the day, when an insurance company is investigating, reinvestigating, and giving the insured the impression that, okay, my claim is still open, that's what stops the clock. I understand that. It's just, it sounds like it's more of a lawyer problem, frankly. Well, Your Honor, did my time, did I pass my time? You went over. Oh, I went over? Okay. You went over three minutes, but I'll give you some rebuttal time. Thank you so much. You're welcome. Good morning, Your Honor. Cheryl Orr on behalf of Appellee State Farm General Insurance Company. The summary judgment was properly granted and the dismissal of the complaint should be affirmed. Okay. This case is clearly within the rule of prudential LMI. There was an unequivocal denial, and I need to really go back and try to set the record straight because there was a lot of... Well, she seems to be concentrating on the second claim, so why don't we do that? The first claim was unequivocally denied on January 7, 2022, and it recited the one-year contractual limitations period and said the one-year period referred to begins to run as of the date of this letter. It couldn't be any clearer. I don't think we're talking about the first claim. We're talking about the second claim. Okay, the second claim. Second claim. Partial denial letter was sent on March 5, 2022. The letter advised Mr. Barbee of the contractual limitations period and stated that it started the running as of the date of that letter. That, of course, I mean, that's not binding. Okay, it's a legal question. Now, what was not discussed. On March 31, 2022, State Farm issued its last payment to Barbee of $409.20. That letter stated, State Farm has completed its investigation of this claim and believes that all covered damages have been paid. We consider this claim closed as of this date... I'm sorry, as of the date of this letter. Again, the letter gave notice of State Farm's final adjustment of the claim and the period of the statute of limitations started commencing under Prudential-LMI, that date for that claim. After that, they came back and re-inspected the residence. At the request of the Barbee's counsel. Right. After that date, they did not pay another payment to the Barbee's. They reissued a settlement check, but under the Garola case that we cited in our brief, a reissuance of a settlement check that apparently got lost or wasn't cashed isn't another payment of the claim. And that was the ADPL issue that was addressed in the March 31, 2022 letter. State Farm did not pay anything else and they did not engage in any negotiations. They had closed that file and said the file was closed as of that date. But a request came in, a letter of representation for Barbee's counsel. And the insurance company has to respond to that. So your position is that the statute of limitations ran March 31, 2023 and they didn't file a suit until June 2, 2023? Well, they had one day extra because there was a delay. The claim was made a day late after it happened. So it would have expired on March 30. Okay, but essentially they sued three months after the statute of limitations. Correct. And there was nothing in this file that shows the State Farm did anything to lead anyone on, either the Barbee's counsel or Barbee's. After they closed the file, then they received the request and the Barbee's counsel asked for State Farm to re-inspect the property. Did they do anything else besides re-inspect it? I thought you said they had. Well, what they did is the claims note reflect that they had the inspection. And then the attorney asked State Farm's examiner at the inspection, will you consider additional information? And they said, yeah, we'll consider additional information if there's any new information. And they confirmed that there were no more pictures, no more videos, no additional evidence that was in the hands of ServPro. And they received nothing more from the Barbee's counsel. What about this 40-day notice? I don't even know. What is the 40-day notice? The 40-day notice is a stray remark in the claims file. And I will point out that this issue was raised for the first time in the reply brief. And it was not an issue that was. But what is it? And what happened? I don't know. Do they send a notice to the Barbee's? I can't tell you. There's no evidence in this record of what that letter was or if it even related to this claim. I can't tell you. There's a stray note in the claims file. It wasn't the subject of litigation. It seems pretty clear that some internal. If you looked at the internal records alone, you would think you had an open claim. But this is the function of the way that they administer in-house claims. They have an electronic claims handling system. Anytime there's a voicemail, a telephone, a letter, it gets recorded in the ECS system. So they have to open the file that's already claimed to log it in. And they put it in. And they say, okay, is there anything else that happens? And the claim that there were any additional payments or any negotiations with the Barbee's Council is just unfounded on this record. There's nothing in the claims file that reflects that. They were willing to go to inspect the property at the request of the Barbee's Council. And there's nothing unreasonable. In fact, it was more than reasonable for State Farm to do that. But they were provided no additional information that changed the outcome. It didn't reflect on anything. And this case does not warrant a departure from the rule in Prudential LMI. There's nothing that distinguishes this case. And there was never an argument made in the trial court that this was an estoppel case or a waiver case or anything like that. Those arguments were not made in the opposition brief. They were not submitted in any form in the separate statement with any supporting evidence. And even that claims note, the 40-day note, was not mentioned in the separate statement. It wasn't mentioned in the opposition brief. And it only came up for the first time in this reply brief. So this is the first time State Farm is addressing it during this oral argument, which is not the appropriate standard. You can't create a tribal issue of material fact in the Court of Appeal by speculating about evidence that was not presented in the trial court. That is not the rule of summary judgment. But as far as Singh goes, there's nothing that distinguishes this case from Singh. Again, the misrepresentation of what happened that was presented. Under California law, have California courts treated ASU as kind of a one-time event that allowed these Northridge earthquake claims to be considered separately than the ordinary round-the-mill insurance claim? Because 340.9 was a revival statute. It revived the statute of limitations for only Northridge earthquake claims. This is not a Northridge earthquake claim. It's not governed by 340.9. ASU doesn't apply. ASU was very limited. Has it ever been extended to cover another situation? Or would the legislature have to enact another revival statute? Yeah, they would have to enact another revival statute because section 2071 of the insurance code has been in place since, I think, 1949. And that one-year statute of limitation has been recognized under prudential LMI since 1990. ASU addressed the second annual tolling period in 1998. And the Supreme Court of California has not taken any steps to change that rule. That a willingness to reconsider, a willingness to accept new information does not mean that the final adjudication or adjustment of the claim didn't happen. It doesn't nullify that prior unequivocal— October 13th letter says, we have completed our investigation and the evaluation of our loss and have determined there was no accidental, direct, or physical loss. That certainly sounds like until then they were investigating and evaluating. Well, but if you look at the claims file notes, the only reason they sent that was to finally close this out because they hadn't heard back from the Barbies Council. And they had already denied the claim for ADPL in the March 31, 2022 letter. That was for the kitchen cabinets. All of this relates to the kitchen cabinets. In the March 31, 2022 letter, they provided an additional payment of $0.0290 for some damage that ServPro did to the base plates of the kitchen cabinets. But in the prior letter, March 9, State Farm denied coverage for the kitchen cabinets because they said there was no accidental physical loss of the kitchen cabinets, which were two rooms from where the location of the laboratory was located. And they said the kitchen cabinets, the upper kitchen cabinets were not damaged by the overflow of the toilet. And they told the Barbies that in March 9. And then they issued one more payment for the damaged toe kicks on March 31. And they said the claim is closed. No ADPL. The October 31 letter doesn't refer to the earlier one as a denial or state when the limitations period runs, does it? It does not. But the claim had already been denied. Again, this was a request for the reopening of the file. And there was no new evidence. No new evidence was presented when they went to inspect the property. The property was the same as it was when they inspected it before. The counsel for Barbie presented no new information. And ServPro had no information. But anyone who didn't know anything more about the history of all this would think that that letter, the October 13 letter, was the denial letter. There's no indication otherwise. It doesn't refer to an earlier denial. It doesn't refer to an earlier limitation state. And it says we've completed our investigation and evaluation and have determined. Well, I think that one could look at this court's decision in Wagner v. Federal Emergency Management Agency 1988 decision. And it says responding to further inquiries about the case has no impact on the running of the limitations period. And this court also, back in 1969 in the Claremont aircraft case, said supplying subsequent oral or written explanation of its denial of the claim did not vitiate the prior final denial. So even though this additional letter was sent, it didn't vitiate the prior denial of the first claim. And it didn't vitiate the prior denial of the kitchen cabinet that was reiterated. What was the date of the first denial, what you're saying was the first denial, March 31st? There was a, March 5 was the partial denial. Then there was a subsequent letter on March 9 that dealt with the kitchen cabinet. And it made the payment subject to the deductible. And then there was the third letter, March 31, 2022. All of those letters recited the contractual limitations period and said that it was running as of that date. And then the last one said, March 31, saying we're going to close this file. We've paid all the covered damages have been paid. And there were no other damages paid. Let me be clear. There was a reissuance of a prior settlement check that was paid with the March 9th letter because Mr. Barbee said he didn't receive it. There were no new payments and there were no negotiations. There was some argument in the reply brief that there's some negotiations. There were no negotiations. All it was is they agreed to go to the reinspection and to be provided with information. And the Barbee's counsel did not provide any additional information. There was no new information that would have changed the outcome and did change the outcome. I would submit that they are asking and they admit that they're only asking for a second equitable tolling period because they waived or forfeited any rights regarding equitable estoppel or waiver because none of that was argued in the trial court and they can't argue it for the first time on appeal. And they didn't even argue it in their opening or reply brief. And the Anshu case, interestingly, only dealt with 340.9 and that Gaylord case that was cited by them in the reply brief. In that case, it is pure dicta that the court mentioned the Anshu case because it was an initial equitable tolling case. The question was, did prudential LMI apply? And the question was, when was the final decision made? Letter, denial letter, given. Because it didn't, I think in that case, there was a question about- So once again, what are you saying is the final denial letter? Well, with respect to the first claim, it's January 7th. Then there was a February 10th letter that didn't make any difference. And then with respect to this second claim, we submit that the March 31, 2022 is the outside date of the final adjustment of the claim because then they said, this is all we are going to pay for covered damages and we are closing our file as of this date. They never changed from that position. But it doesn't include the language about the limitations period. There's no notice of a limitations period in this letter. No, but they said- Isn't that required under California law? No. It seems to be routinely done. It is routinely done, but it's not required. Again, a willingness to reconsider and a statement by the insurance company that it will reconsider evidence is not a reopening of the claims file under the California authorities. It does not create a second equitable tolling period under Singh, under Lamar, or I'm sorry, Marcellus or Migliore. But it wasn't just a request. I mean, they did do some activity and they did refer to it as a reconsideration. I don't believe that they referred in the claims note that it was a reconsideration. Well, in the October letter, well, maybe not a reconsideration, investigation and evaluation. They did a re-inspection and we've completed our investigation and evaluation of a loss. So, they certainly are treating it as that was part of their investigation and evaluation. And I think that if you look at the Pennsylvania case, I forget the name off the top of my head, that we cited in our brief that was also cited as authority in the Singh case. In that case, the claims people met with the insurers to discuss the claim and it was not found that that meeting with the insurers to discuss the claim constituted a reopening or any act that actually vitiated or negated the prior denial. So, our position is if State Farm goes out of its way to respond as it must because the Department of Insurance says you have to respond to an inquiry and they respond to the Barbies Council inquiry and they say, okay, we'll come out. But it's documented in the claims file that we came out and we told you that we're not paying the kitchen cabinets. We already told you we denied the claim for the kitchen cabinets. We're not going to, but we'll consider additional evidence. They were given no additional evidence. So, it doesn't reopen the prior denial. They've already have enough information to know that this claim has been denied in March of 2022. They have counsel that represents them less than three weeks later and their counsel had sufficient time to file a lawsuit within the statute of limitations as to both claims and they failed to do that. That is not State Farm's fault. They had sufficient information in their hands to know that State Farm had denied this claim and they needed to file a lawsuit. All right. Thank you, counsel. Thank you. You went over too. Oh, I'm sorry. Thank you very much. I'll give you two minutes. Thank you, Honor. I'll address a few of the points. First, counsel said nothing distinguishes this case from Singh. I obviously disagree with that. And one of the points that were made that were addressed is, well, the October denial letter doesn't refer to an earlier denial or a limitations date. And that is correct. If we're really comparing this case to Singh, which is what the appellee is trying to do, in Singh, and we could look at, let's see what page this is, page 139. When they were asked to reconsider the case, the court, the insurance company said by letter, so by a letter dated March 22, all state again denied the claim. The March 22 letter told the plaintiffs that, and I'll quote, after reconsideration of your claim, all state respectfully informs you that the position taken in the November 9, 1994 correspondence to you remains unchanged and no policy benefits can be afforded. That letter had explained in detail the reasons for denial and answered plaintiffs' requests for reconsideration point by point. The October letter does not refer back to any other denial, not the March 5 one, not what counsel just suggested that there were letters with the checks that were issued in May. That simply didn't happen in our case. And then counsel represented countless times over and over again that there were no new information, nothing new came, nothing, nothing, nothing, just an inspection and no other photos, but the record reflects otherwise. If I could direct your honor's attention to the fourth volume of the record, there is a notation on page 851 that says on July 29, another check, or sorry, on July 14, additional information was requested to further investigate discrepancies. And then there is earlier than that on June 7, or, oh my, I'm so sorry, I'm mixing these up. There is a July claim note that reflects new documents, including dry logs, were submitted and being actively reviewed. And that's on page 851 of the fourth volume of the record. Then there is the, there is a second note on September 23 that says the, that says that the cabinetry is being reviewed under a separate claim. Cabinetry is being reviewed under a separate claim, again indicating that aspects of the loss were under active claim handling. So this doesn't refer to an earlier denial. It was only partially denied, as indicated in the March 5 letter, saying that the resulting damages are still going to be covered. And then there is this adjustment period. There is the 40-day status letter. I don't understand that point. The damages that were not going to be covered were not the damages we're talking about now. So, and this is a very important point, your honor, so I really want to make sure that it's understood. So there is an exclusion under the policy that, that excludes losses from wear, tear, deterioration, corrosion, whatnot. But under that exclusion, it says, however, we insure for the resulting damage to the loss. And the resulting damage are the damages that the plaintiffs, the appellants in this case, were seeking reimbursement for. The damages that the water caused to the home, to the bathroom, to the kitchen, to the cabinets, wherever it was damaged. I thought that's the part that was granted. That was not the part that was denied. All right, I understand that. What was denied was the actual source of what the water came out of. So that's what triggers the investigation and the adjustment period from the insurance company. That the wear, tear, deterioration, corrosion exclusion that was cited in the March 5 letter doesn't trigger a further investigation on that respect. But that's when the insurance company now needs to decide how big is this loss? How much, what is the discrepancies? What are the estimates saying? What is appellant's expert saying? What are our experts saying? And these are the discrepancies that were- As to the covered loss or as to the non-covered loss? As to the covered loss. So that's what we're arguing about? Arguing about the amount of the covered loss? The argument or the discrepancy in the claim activity between the time between May up until October was the discrepancy about the covered loss. How much, they sent two checks and one expert, plaintiff's expert is saying you didn't afford enough, it's inadequate to cover for the actual losses. State Farm is saying, no, this is what we have based on this information. This is adequate to cover for the losses. So this is the dispute between this period of time as to did we pay enough money to these insureds to cover this loss? This is so different than Singh. I can't even explain because Singh was just not even a covered loss. They didn't even get to the point of investigation. Singh dealt with a situation where... I mean, you read us a passage on page 145 of Singh and then the paragraph immediately before the one that you read says, if the carrier's conduct after denying coverage expressly waives the one-year limit, which I take it you're not suggesting happened here, or induces the policyholder to forbear from filing suit, the doctrines of waiver and estoppel will avoid injustice. So what, in all this correspondence, would you point to to say induced your client to forbear from filing suit? All of the claim activity, Your Honor. It's not about what is written. It's the conduct of the insurance company. They have a duty for good faith to negotiate and resolve fully, thoroughly, and completely look at and investigate claims before they ultimately give their final coverage decision. But you've never once argued estoppel or waiver. You've continued to argue tolling. Your Honor, because I believe it's the case issue, and I wish I had it in front of me, distinguishes the estoppel and the waiver from equitable... What Judge Miller just read distinguishes it. I don't know what case that was you were reading. That was Singh, Your Honor. And if I may just... You know, when you need to find something, you can't find it. But there was a very significant discussion in Eshoo about how they differentiated the equitable tolling from estoppel. And even in that case, the court looked at it and said, no, this doesn't qualify for estoppel. This is a pure equitable tolling question. And the rationale in Eshoo is in line with what we're presenting or suggesting today. And just finally, just from a policy perspective, by affirming the district court would put insureds in a very difficult position. If an insurance company can say we're still investigating, we're doing this, we're doing that, we're sending 40-day status letters as is required for open claims, and then... Was your opponent correct that you have no... The only evidence of that is a notation, but you don't actually have the letter, the record? I have to check. I would think that it's in the record. I don't have the pin site to it. I do have the notation. You maintain that there is no letter in the record on that. I disagree. I would disagree. I just don't have the pin site, for your honor, unfortunately, at this point. And anything that's indicated in the claim notes is actually an act that has happened. Insurance companies are not allowed to put claim notes of things that have not happened. And the 40-day status letter indication is actually in the record, volume four, page 850. So on a policy perspective, if you allow the insurance company to do all this conduct, adjusting of a claim, and then turn around and say, well, the limitations period passed, then you're doing exactly what Prudential, our Supreme Court was trying to preclude, to have insureds going and filing lawsuits before an adjustment of a claim is done. And this is a situation that my office and just insureds in general are running across because it seems like the equitable tolling, the way that the insurance companies are tying it to the SING rationale is almost like a limitations track. Maybe you should take them at their word when they say the statute of limitations is running from today. Your honor, but again, in this case, and it's unique, it was a partial denial letter. So even there, there was vagueness and ambiguity. Okay, is the statute of limitations, if I wanted to pursue this case for the pipe itself, is my statute on that aspect of my claim running from today? Or is the resulting water damage running from today? It's a partial denial letter. And that's what distinguishes, I think, the facts of this case from any of the cases that have been cited by the appellee. All right, well, you've gone way over a bit. Thank you very much. Thank you. Thank you, your honor, for your argument. Barbie versus State Farm will be submitted.
judges: WARDLAW, BERZON, MILLER